UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEVONE L. LITTLE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:17-CV-1281 PLC |
| | ) |
| PAUL BLAIR and | ) |
| ERIC SCHMITT,[1] | ) |
| | ) |
| Respondents. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Jevone Little's pro se petition for writ of habeas corpus seeking relief from a Missouri state court judgment entered after guilty pleas. See 28 U.S.C. § 2254. [ECF No. 1]  Respondents Paul Blair and Eric Schmitt filed a response to the petition, along with exhibits consisting of copies of the materials from the underlying state court proceedings, and Petitioner filed a reply. [ECF Nos. 8, 9]  For the reasons set forth below, the Court denies the petition for writ of habeas corpus.[2]

**I.    Background**

Petitioner is currently an inmate at Potosi Correction Center in Mineral Point, Missouri. In 2012, the State charged Petitioner with felony murder (Count I), two counts of armed criminal action (Counts II and IV), and first-degree robbery (Count III), and in the alternative, felony

---

[1] The Court substitutes as a Respondent Paul Blair, the current warden of the Potosi Correctional Center ("PCC") for Cindy Griffith, who was PCC's Warden when Plaintiff filed this habeas proceeding.  Fed. R. Civ. P. 25(d).  Because Petitioner is subject to consecutive sentences imposed by the trial court for the conviction he is challenging in this federal habeas proceeding, the Court will add as a named Respondent Eric Schmitt, the Attorney General of the State of Missouri. See Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts.
[2] The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c)(1). [ECF No. 6]

murder (Count V), armed criminal action (Count VI), and attempted sale of a controlled substance (Count VII). [ECF No. 8-5 at 16-19] All of the charges arose from events that occurred on December 24, 2010, when Petitioner shot and killed Brandon Joyce ("Victim") during a drug transaction.

A. Plea court proceedings

Petitioner pleaded guilty in the Circuit Court of St. Charles County, without a plea agreement from the State, to Counts V, VI, and VII. At the beginning of the plea hearing, the plea court recited the charges against Petitioner and the range of punishment for each charge. [ECF No. 8-5 at 37-39] Petitioner affirmed that he read, reviewed with his attorney, and signed the plea "form" and he understood that he was waiving his right to a trial, at which his attorney would be able to present evidence and witnesses for him and the State would have to prove him guilty beyond a reasonable doubt. [Id. at 39-43] The plea court asked, "Do you understand that by entering these pleas of guilty today you're waiving that right to a jury trial, you won't have a trial of any kind and you're also waiving your right to an appeal?" [Id. at 42] Petitioner answered, "Yes, sir." [Id.] Petitioner also affirmed his understanding that he could choose to plead guilty to some of the charges and have a trial on the others. [Id. at 43]

In regard to his representation by counsel, Petitioner testified that he had "all the time [he] needed" to speak with his attorney about his case and discuss possible witnesses, his attorney had "done everything in [his] case that [he] asked him to do," and Petitioner was "satisfied with his services." [Id. at 41-42] Petitioner also affirmed that no one had made any promises or threats to induce him to plead guilty, and he understood that his sentence would be "totally up to [the judge], as long as [he] stay[ed] within the ranges of punishment for each charge." [Id. at 40, 42]

2

The prosecutor recounted the evidence the State would present with respect to each count. [Id. at 48] In response to questioning by the prosecutor, Petitioner testified that on December 24, 2010, he was walking on Main Street in St. Charles, Missouri, when Victim "had stopped me trying to buy some cocaine." [Id. at 53-54] Petitioner testified that, after retrieving cocaine and a gun from his cousin's[3] car, Petitioner and Cory Brooks entered Victim's truck. [Id. at 54-55] Victim drove Petitioner and Mr. Brooks to a casino, where Victim picked up a friend, and proceeded to an ATM to withdraw money. [Id. at 58] Petitioner became suspicious that Victim was a police officer and told Victim that "I didn't want to make the deal, the drug transaction." [Id. at 58] According to Petitioner, Victim became "very upset and started just going crazy. He started grabbing in people's pockets and stuff and I removed the handgun. When I removed the handgun he turned around and attacked me and then we became fighting over the handgun and I just shot it." [Id.]

Petitioner announced that he was pleading guilty to Counts V, VI, and VII, and the plea court found Petitioner made his pleas "voluntarily and intelligently with a full understanding of the charges and the consequences of the pleas and with an understanding of his rights to a jury trial and the effect of the pleads of guilty upon those rights." [Id. at 64] The plea court accepted Petitioner's guilty pleas and deferred sentencing for the preparation and consideration of a sentencing assessment report. [Id.]

B.  Sentencing hearing

Two months later, the court held a sentencing hearing, at which several witnesses testified for the prosecution. Det. Michael Shaw, a member of the St. Louis Metropolitan Police

---

[3] It is not clear to whom the car belonged. Based on the plea and sentencing hearing transcripts, Petitioner's two cousins, Cory Brooks and Tory Brooks, participated in the events preceding Victim's death.

3

Department's (SLMPD) gang unit, testified that, on October 7, 2010, he was on duty and stopped for lunch at a Hardee's restaurant.  [Id. at 75]  In the bathroom, he observed Petitioner remove a "fully concealed weapon[4] out of his waistband" and "place[] it on the urinal."  [Id. at 76]  When Det. Shaw exited the bathroom, he saw that the man with whom Petitioner entered the restaurant was standing in line, and a Ford Explorer was "parked in front of the store with the engine running … probably about five feet from the door."  [Id. at 77]  Believing that Petitioner intended to rob the restaurant, Det. Shaw and his partner, Det. Theron Murphy, arrested Petitioner for possession of a handgun.  [Id. at 78]

Det. Murphy also testified at the sentencing hearing about Petitioner's arrest in October 2010.  [Id. at 86-92]  After learning of Petitioner's firearm and observing the position of the vehicle, Det. Murphy suspected that Petitioner, along with the man in line and the driver of the Ford Explorer, were planning a robbery.  [Id. at 88]  Dets. Murphy and Shaw arrested Petitioner and "the other subject," then approached the waiting vehicle.  [Id. at 90]  Det. Murphy observed "a handgun resting on [the driver's] lap," and Det. Shaw arrested the driver.  [Id.]

Next, Det. Kevin Bentley, also a member of the SLMPD gang unit, testified that Petitioner was "affiliated" with the Geraldine Street Crips, which was "one of [the city's] most violent gangs."  [Id. at 94-95]  Det. Bentley stated that Petitioner had admitted membership in that particular gang and "ha[d] a tattoo indicative of what a Geraldine Street member would have on them."  [Id. at 95]

Det. Jeff Ovca, who worked for the Chesterfield Police Department, testified that he was "involved in the investigation of the [Victim's] homicide and in the apprehension of [Petitioner.]" [Id. at 99]  Det. Ovca stated that he attempted to arrest Petitioner at Petitioner's father's residence.

---

[4] Det. Shaw specified that the weapon was a "TEC-9 machine gun, pistol[.]"  [Id. at 76]

4

[Id. at 100]  Petitioner's father informed Det. Ovca that Petitioner was inside and permitted police officers to enter, but Petitioner was not present.  [Id. at 101]  When Det. Ovca knocked on the door of the neighboring apartment, the man who answered the door "was very startled and he actually grabbed me by the collar and by my arm and he started pulling me into his apartment saying he's in here, he's in here … [H]e pointed to the back bedroom on the back right…."  [Id. at 101]  Det. Ovca and another detective demanded Petitioner "show himself," and they arrested him.  [Id.]

Det. Donald Stepp, a police officer with the St. Charles Police Department, testified that he investigated Victim's murder and interviewed all the suspects in the case.  [Id. at 103]  Det. Stepp stated that the other participants in the events leading to Victim's death agreed that Petitioner was "the ringleader in this operation."  [Id. at 104]  Additionally, Tory Brooks informed Det. Stepp that, before Petitioner entered Victim's car, Petitioner told Mr. Brooks they were going to rob Victim.  [Id.]  Det. Stepp testified that, when he interviewed Petitioner, Petitioner did not "seem to have a very consistent story," but he eventually admitted that "he had been the one with the gun" and "the gun was in his hand when [Victim] was shot."  [Id. at 105, 108-09]

Officer David Brazel, a St. Charles County corrections officer, testified that, while Petitioner was confined at the St. Charles County jail, he observed Petitioner violently assault another inmate.  [Id. at 117]  More specifically, Officer Brazel stated:  "I saw [Petitioner], along with Mr. Logan, approach Mr. Conner from behind, strike him about his head from behind, causing Mr. Conner to fall to the floor, after which they both alternately took turns stomping with their feet upon his head."  [Id. at 118]

Lt. Michael McKee, the "operations lieutenant" at the St. Charles County Jail, testified that when Officer Brazel called for assistance at the scene of the assault, Lt. McKee responded and found "blood all over the floor from the back of [the victim's] head.  He also had some coming

5

out of his mouth." [Id. at 120-21]  Lt. Mckee testified that the victim spent three days at the hospital and suffered significant short-term memory loss.  [Id. at 122]  Lt. McKee stated that was not the "first time [he] had to deal with [Petitioner] beating up other inmates or fighting" and that Petitioner had threatened corrections officers.  [Id. at 122-23]  After the attack on Mr. Conner, Petitioner was placed in disciplinary administrative segregation.  [Id. at 124]  According to Lt. Mckee, Petitioner had since transferred back to general population and had "not had a problem since[.]" [Id.]

Following witness testimony, the sentencing court heard victim impact statements from Victim's aunt, cousin, girlfriend, mother, and sister [Id. at 128-68] and oral arguments from the prosecutor and defense counsel [Id. at 169-84].  The sentencing court then announced the following sentence:  life in prison for Count V, felony murder; fifteen years for Count VI, armed criminal action, to run consecutively to the sentence for Count V; and fifteen years for attempted sale of a controlled substance, to run concurrently with the sentence for Count V.  [Id. at 186]

The sentencing court explained to Petitioner his right to seek post-conviction relief under Rule 24.035 and questioned him about his representation by counsel.  [Id. at 188]  Petitioner testified that his counsel provided him copies of the police reports, but when the sentencing court asked whether Petitioner provided his counsel names of potential witnesses, Petitioner answered, "No, sir.  Is it all right if I just don't want to talk about that right now?  Would that be all right?" [Id. at 190]  The sentencing court replied, "…I need to ask the questions.  It's up to you whether or not to answer them, okay?," and Petitioner agreed.  [Id.]

Petitioner testified that he did not know "of any people that [his] attorney should have talked to but failed to" and his attorney explained Petitioner's "options … as far as standing trial or pleading guilty" and informed Petitioner of the possible punishments that he could receive if he

6

pleaded guilty. [Id. at 190-91] Petitioner stated that, after discussing his options, Petitioner informed his counsel that he wished to plead guilty. [Id. at 191] Petitioner stated that his counsel did nothing at the plea hearing with which he disagreed and he felt "ready as far as knowing where [he] stood under the law" at the time of the plea hearing. [Id.] The sentencing court noted some hesitancy in Petitioner's latter statement, and Petitioner explained: "I wasn't ready for no life sentence, you know, but I was ready for, you know, as far as at least getting like twenty-five or thirty, hoping I get that, but I didn't think I should deserve life, you know." [Id. at 192] The sentencing court acknowledged Petitioner's dissatisfaction with his sentence, and again asked whether Petitioner had "decided to ultimately plead guilty." [Id.] Petitioner affirmed that "ultimately it was up to" him to plead guilty and he could have gone to trial. [Id.]

The sentencing court found that Petitioner's counsel had investigated the case, advised Petitioner, prepared Petitioner for the plea, and "represented him at the plea in a reasonably competent manner." [Id. at 193-94] The sentencing court therefore concluded "there is no probable cause to believe the defendant herein has received ineffective assistance of counsel," and entered the judgment and sentence. [Id. at 194, 228-230]

C. Post-conviction proceedings

Petitioner filed a pro se motion for post-conviction relief (PCR) pursuant to Missouri Supreme Court Rule 24.035. [ECF No. 8-5 at 241-51] Through counsel, Petitioner filed an amended PCR motion, along with a request for an evidentiary hearing. [Id. at 252-57] In his amended motion, Petitioner alleged his plea counsel provided ineffective assistance of counsel by failing "to fully advise [him] of his rights to plead not guilty (or persist in that plea if it had already been made)" as required by Missouri Supreme Court Rule 24.02(b).[5] [Id. at 253]

---

[5] Missouri Supreme Court Rule 24.02(b), provides, in relevant part:

7

The motion court conducted an evidentiary hearing in September 2015, at which plea counsel and Petitioner's mother testified and counsel for Petitioner presented Petitioner's deposition testimony. [ECF No. 8-7] Plea counsel testified that he had "many conversations" with Petitioner prior to the plea hearing. [Id. at 6] While plea counsel did not recall the specifics of his conversations with Petitioner, he testified: "…I always go over the fact that they … have a right to a trial or they have a right to plead guilty … we were weighing those [options] through the entire length of the case." [Id. at 7] Prior to the plea hearing, plea counsel discussed with Petitioner "in detail" the possible ranges of sentences and "made an offer of 20 years to the prosecutor, that was declined." [Id.] Plea counsel also explained to Petitioner that, without a plea agreement, he could receive "the maximum sentence consecutive." [Id. at 8]

Petitioner's mother, Shonta Little, testified that Petitioner left school after ninth grade and "had a lot of problems in school." [Id. at 9] Ms. Little stated that, on the day of the plea hearing, Petitioner was prepared to try the case but plea counsel advised him that, if Petitioner went to trial he would receive "life sentence[s] on each case," but if he pleaded guilty he would get only fifteen to twenty years. [Id.] On cross-examination, Ms. Little stated that Petitioner lied when he testified under oath that he alone decided to plead guilty and that no one had promised him anything in exchange for his guilty plea. [Id. at 12-13]

---

> [B]efore accepting a plea of guilty, the court must address the defendant personally in open court, and inform defendant of, and determine that defendant understands … *[t]hat defendant has the right to plead not guilty or to persist in that plea if it has already been made*, and that defendant has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against defendant, and the right not to be compelled to incriminate himself or herself[.]

Missouri Supreme Court Rule 24.02(b)(3) (emphasis added).

8

The motion court admitted Petitioner's deposition transcript. [Id. at 17] In his deposition, Petitioner testified that plea counsel "didn't really tell me anything…. He had just told me that he had everything lined up how he wanted it. And to just roll with him. Do what he said…. He told me I would get 20 years." [ECF No. 8-6 at 7] Petitioner further stated that plea counsel had advised him that "the only reason I got to plead guilty and that I can't get manslaughter or self-defense is because I'm [B]lack, and that I'm in St. Charles. And because the victim was white." [Id.] Petitioner emphasized that he felt he had no choice but to plead guilty and "[if] the judge would have told me I could continue to plead not guilty, I would have never pled guilty." [Id. at 8-9] Additionally, Petitioner stated that plea counsel: did not talk to, subpoena, or depose any of his witnesses; did not "do an autopsy on [Victim] that show[ed] he was on drugs the night it happened"; and only visited him in jail "like six times." [Id. at 10-11]

The motion court entered a "Findings of Fact, Conclusions of Law and Judgment Denying Movant's Rule 24.035 Motion" denying Petitioner's PCR motion. [ECF No. 8-5 at 258-66] The motion court found that the record refuted Petitioner's claim that plea counsel neither informed Petitioner of his right to plead not guilty nor ensured that the plea court advised Petitioner of that right. [Id.] The motion court also rejected Petitioner's contention that, under Missouri Supreme Court Rule 24.02(b)(3), if a court "did not use the exact words 'you have a right to plead not guilty' [ ] the plea was somehow rendered legally deficient."[6] [Id. at 259] As to Petitioner's claim that plea counsel promised him a specific sentence, the motion court found that (1) the claim was not

---

[6] The motion court further found that because Plaintiff's did not claim in his Rule 24.035 motion that plea counsel promised him a specific sentence in exchange for guilty plea, that claim was not cognizable and, even if it were, Petitioner's "entire testimony throughout his deposition" was not credible. [Id. at 261]

9

cognizable because Petitioner did not raise it in his PCR motion and (2) even if he had, Petitioner's "entire testimony throughout his deposition [was] not … credible." [Id. at 261]

    D.  Post-conviction appellate court proceedings

Petitioner appealed the denial of his PCR motion, arguing that the motion court erred in denying his claim that his plea counsel violated his Fifth, Sixth, and Fourteenth Amendment rights to the effective assistance of counsel because both plea counsel and the plea court failed to adequately advise Petitioner of his right to plead not guilty or persist in that plea if it had already been made. [ECF No. 8-1] The Missouri Court of Appeals for the Eastern District affirmed the motion court's judgment in an unpublished per curiam order accompanied by a memorandum sent to the parties setting forth the reasons for the order. Little v. State, No. ED103733 (Mo. Ct. App. Oct. 25, 2016. [ECF No. 8-3]

In its memorandum, the Court of Appeals stated that "[w]hen a movant pleads guilty, claims of ineffective assistance of counsel are relevant only to the extent they affect the voluntariness with which the plea was made. Jones v. State, 211 S.W.3d 210, 213 (Mo. App. S.D. 2007)." Little, No. 103733, at 4. The Court of Appeals agreed with the motion court that the plea court satisfied its duty under Rule 24.02(b)(3) and found that "[t]he record in this case clearly established that [Petitioner] understood the charges, the penalty, and the constitutional rights he was giving up by pleading guilty." Id. at *6 (citing Dean v. State, 950 S.W.2d 873, 876-77 (Mo. App. 1997)). The Court of Appeals concluded that the motion court did not err in denying Petitioner's PCR motion because (1) the record refuted his claim that plea counsel was ineffective and (2) Petitioner failed to sufficiently allege that he suffered any prejudice. Id.

10

## II. Standard of Review

A prisoner in custody under the judgment and sentence of a state court may seek habeas relief on the grounds that his custody violates the United States Constitution. See 28 U.S.C. §§ 2241(c)(3), 2241(d). When considering a state prisoner's habeas petition, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), see 28 U.S.C. § 2254(d), to exercise "only limited and deferential review of underlying state court decisions." Nash v. Russell, 807 F.3d 892, 897 (8th Cir. 2015) (internal quotation marks omitted) (quoting Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011)). A federal court may not grant habeas relief to a state prisoner unless a state court's adjudication of the merits of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) ("Taylor"). If a state court's decision is not "contrary to" clearly established federal law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" Roper, 695 F.3d at 831 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular . . . case." Taylor, 529 U.S. at 407-09; see also

11

id. at 413.  The test of reasonableness is an objective one.  Id. at 409-10; accord White v. Woodall, 572 U.S. 415, 419 (2014).

The "clearly established Federal law" requirement of habeas review under Section 2254(d)(1) requires the habeas court to consider only United States Supreme Court precedent in force when a state court issues its decision.  Greene v. Fisher, 565 U.S. 34, 38-40 (2011) (relying on Cullen, supra); accord Taylor, 529 U.S. at 412.  State courts are not required to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Revels v. Sanders, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).  Importantly, when reviewing a matter under Section 2254(d)(1), a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 563 U.S. at 181-82.

The state court record is also significant when a federal habeas court analyzes under Section 2254(d)(2) whether a state court decision on the merits of a claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A federal habeas court "accord[s] the state . . . court substantial deference" and does not supersede the state court's factual determination if "reasonable minds reviewing the record might disagree about the finding in question."  Brumfield v. Cain, 576 U.S. 305, 314 (2015) (internal quotation marks and citation omitted).  For purposes of Section 2254(d)(2), "a state-court factual determination is not unreasonable merely because [a] federal habeas court would have reached a different conclusion in the first instance."  Wood v. Allen, 558 U.S. 290, 301 (2010).

Importantly, "a determination of a factual issue made by a State court [is] presumed to be correct" unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  The presumption of correctness applies to the factual determinations made

12

by a state court at either the trial or appellate levels, Smulls v. Roper, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc), and to a state court's implicit findings of fact, Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014).  Likewise, federal habeas courts defer to state court credibility determinations, Smulls, 535 F.3d at 864, and to "[a] state court's findings of fact made in the course of deciding" an ineffective-assistance-of-counsel claim, Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

Although the Supreme Court has not yet clarified the relationship between the "unreasonable" provision of Section 2254(d)(2) and the "presumed correct" provision of Section 2254(e)(1), see, e.g., Burt v. Titlow, 571 U.S. 12, 18 (2013); Velez v. Clarinda Corr. Facility, 791 F.3d 831, 834 n.1 (8th Cir. 2015) (citing Brumfield, 576 U.S. at 322), Eighth Circuit authority supports the granting of habeas relief under Section 2254(d)(2) when a petitioner provides "clear and convincing evidence that the state court's presumptively correct factual finding [that is material to its decision on the merits] lacks evidentiary support.  28 U.S.C. § 2254(e)(1)."  Trussell v. Bowersox, 447 F.3d 588, 591 (8th Cir. 2006); accord Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)").  Put another way, a petitioner is entitled to relief under the AEDPA if the state court decision "at issue is based on factual determinations that could not reasonably be derived from the state court evidentiary record."  Velez, 791 F.3d at 834.

**III.    Discussion**

Petitioner presents one ground in his habeas petition.  Petitioner claims that his guilty plea was unknowing and involuntary because his plea counsel and the plea court "failed to adequately advise [Petitioner] of his right to plead not guilty or to persist in that plea if it had already been

13

made." [ECF No. 1]  Petitioner further asserts that had he known he could maintain his plea of not guilty, he would not have pleaded guilty.  Respondents counter that the decisions of the state post-conviction motion court and the Missouri Court of Appeals rejecting the merits of Petitioner's ground for relief were reasonable and entitled to deference under 28 U.S.C. § 2254(d).[7]  [ECF No. 8]

    A.  Ineffective assistance of plea counsel

The Sixth Amendment's guarantee of counsel is applicable to the States through the Fourteenth Amendment because it is a fundamental right and essential to a fair trial.  Gideon v. Wainwright, 372 U.S. 335, 342-45 (1963).  To establish an ineffective-assistance-of-counsel claim, Strickland requires a showing by a petitioner that: (1) "counsel's performance was deficient," i.e., that "counsel's representation fell below an objective standard of reasonableness" under all the circumstances ("performance prong") and (2) "the deficient performance prejudiced the defense" ("prejudice prong").  Strickland, 466 U.S. at 687, 688.  A court need not address both prongs of the Strickland test if it finds the habeas petitioner has not established one of the prongs.  Strickland, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one"); accord Osborne v. Purkett, 411 F.3d 911, 918 (8th Cir. 2005) (stating the petitioner "did not satisfy the performance [prong of the Strickland test so the court] need not consider the prejudice" prong); Odem, 382 F.3d at 851 (stating "[i]t is not necessary for [a court] to consider the prejudice [prong] of the Strickland analysis" after concluding the petitioner did not satisfy the performance prong).

---

[7] Respondents acknowledge that Petitioner's habeas petition was timely under 28 U.S.C. § 2244(d)(1)(A).  [ECF No. 8 at 3-5]

When a criminal case is resolved by a guilty plea instead of a trial, the Constitution requires that the plea be made knowingly, intelligently and voluntarily, with knowledge of "the relevant circumstances and likely consequences," because it constitutes a waiver of a defendant's right to a trial, right to confront accusers, and privilege against self-incrimination. United States v. Brady, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). "The entry of a guilty plea . . . ranks as a 'critical stage' at which the right to counsel adheres." Iowa v. Tovar, 541 U.S. 77, 81 (2004). A plea is intelligently and knowingly made when it follows advice by competent counsel, a defendant is made aware of the nature of the charges against him, and nothing shows a defendant is "incompetent or otherwise not in control of his mental faculties." Brady, 397 U.S. at 756. A defendant "who pleads guilty upon advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann[ v. Richardson, 397 U.S. 759 (1970)],'" or was not within the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 U.S. 52, 56-57 (1985) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)).

Strickland's two-pronged test "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill, 474 U.S. at 58. To prevail, a habeas petitioner must show that his counsel's performance was deficient, i.e., fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. Id. at 57-59.

As the Supreme Court has explained, under the AEDPA "[t]he pivotal question" for a federal habeas court reviewing an ineffective-assistance-of-counsel claim that was subject to state court review on the merits, "is whether the state court's application of the Strickland standard was unreasonable." Harrington, 562 U.S. at 101. "Establishing that a state court's application of

Strickland was unreasonable under § 2254(d) is . . . difficult." Id. at 105. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (internal citations omitted). Specifically, after a state court reviews the merits of an ineffective-assistance-of-counsel claim, it is not sufficient for a federal habeas petitioner to "show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance." Bell v. Cone, 535 U.S. 685, 698–99 (2002). Instead, a federal habeas court "assess[es] the state courts' assessment of counsel's performance." Barnes v. Hammer, 765 F.3d 810, 814 (8th Cir. 2014). Put another way, a federal habeas court views the ineffective-assistance-of-counsel claim through two filters: first, the court defers to the judgments of trial counsel under Strickland, 466 U.S. at 689, and second, the court "defer[s] to the state courts' application of federal law to the facts of the case." Shelton v. Mapes, 821 F.3d 941, 946 (8th Cir. 2016) (cleaned up).

A federal habeas petitioner "must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 699. "A state-court decision is 'unreasonable' within the meaning of § 2254(d) only when it is 'so lacking in justification that there [is] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Daniels v. Kelley, 881 F.3d 607, 611 (8th Cir. 2018) (quoting Harrington, 562 U.S. at 103) (alteration in original).

In his reply to Respondents' response to the Court's show order, Petitioner claims that the Missouri Court of Appeals misapplied Strickland. [ECF No. 9 at 2] However, Petitioner fails to identify how the Missouri Court of Appeals allegedly misapplied the law.

Upon review of the record, the Court finds that the Missouri Court of Appeals properly applied Strickland's ineffectiveness standard to Petitioner's claim. In its opinion, the Court of

16

Appeals stated that, when a movant pleads guilty, he "waive[s] any claim that counsel was ineffective except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made." Little, No. ED103733, at *3-4 (quoting Miller v. State, 260 S.W.3d 393, 394 (Mo. App. 2008)). The Missouri Court of Appeals reviewed the transcripts of the plea and sentencing hearing and cited considerable evidence that Petitioner entered the plea knowingly and voluntarily.[8] Considering both prongs of the Strickland test, the Court of Appeals held that Petitioner failed to either (1) demonstrate that plea counsel's representation was deficient or (2) sufficiently allege or prove prejudice. Little, No. 103733, at *4-6. The Court of Appeals therefore affirmed the motion court's rejection of Petitioner's claim that ineffective assistance of counsel had rendered his plea unknowing and involuntary. Id. at 6. The Court of Appeals did not unreasonably apply established federal law.

Furthermore, the record supports the state court's findings of fact, which are entitled to a presumption of correctness because Petitioner has not introduced any evidence to rebut the presumption by clear and convincing evidence. During the plea hearing, the plea court reviewed the counts against Petitioner and the range of punishment for each charge. Petitioner testified that he understood that, by pleading guilty, he was waiving his right to a trial. Petitioner further understood that he could choose to plead guilty to some of the charges and proceed to trial on the

---

[8] In support of its finding, the Missouri Court of Appeals noted that Petitioner: (1) signed a Petition to Enter Guilty Plea, which stated that no promises, threats, or coercion were used to induce him to plead guilty and that the court would determine his sentence; (2) testified at the plea hearing that that he understood and read the plea petition, no one told him to plead guilty, he understood that he was waiving his right to a trial, he understood that he could plead guilty to some of the charges and have a trial on the others, he was satisfied with the services of his counsel, and no promises or threats were made to induce him to plead guilty; and (3) testified at the sentencing hearing that counsel had explained his options of either going to trial or pleading guilty, it was his decision to plead guilty, and he knew when he pleaded guilty "where [he] stood under the law." Little, No. 103733, at *4-5.

others. The plea court explained that, because there was no plea agreement, Petitioner's "sentence will be totally up to me," and Petitioner assured the court that he understood. [ECF No. 8-5 at 40] Importantly, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Therefore, while a guilty plea taken in open court is subject collateral attack in a post-conviction proceeding, "the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (quoting Voytik v. United States, 778 F.3d 1306, 1308 (8th Cir. 1985)). Nothing of record challenges the truthfulness of any of Petitioner's statements during the plea proceeding. Petitioner has not established his plea counsel's performance fell below an objective standard of reasonableness.

For the above reasons, the Missouri court's finding that Petitioner's guilty plea was not involuntary due to ineffective assistance of plea counsel was reasonable and supported by the record. The Court therefore finds that the Missouri Court of Appeals' determination that counsel's performance was not deficient or ineffective and that Petitioner's plea was knowing and voluntary (1) is not contrary to or an unreasonable application of clearly established federal law, and (2) is not based on an unreasonable determination of the facts in light of the evidence. Petitioner's Ground One is denied.

B. Certificate of appealability

A final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court cannot be appealed unless the judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). A judge may issue a COA under Section 2253(c) only if a petitioner has made "a substantial showing of the denial of a

18

constitutional right." Tennard v. Dretke, 542 U.S. 274, 282 (2004); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  This standard requires a petitioner to demonstrate, with respect to claims resolved on the merits, that "reasonable jurists would find the … court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); accord Miller-El, 537 U.S. at 338 (quoting Slack, 529 U.S. at 484).

The Court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right.  Accordingly, the Court will not issue a certificate of appealability with respect to any aspect of the denial of Petitioner's amended petition.

### IV.   Conclusion

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that the Clerk of Court shall **SUBSTITUTE** for Cindy Griffith the current warden of the PCC, Paul Blair, as a named Respondent and shall **ADD** as a named Respondent Eric Schmitt, the Attorney General of the State of Missouri.

**IT IS FURTHER ORDERED** that Petitioner's petition for writ of habeas corpus [ECF No. 1] is **DENIED**.

**IT IS FINALLY ORDERED** that the Court will not issue a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2021